E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALIX MCKENNA (Cal. Bar No. 295202)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6166
    Facsimile: (213) 894-0141
    E-mail:  alix.mckenna@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>          v.<br><br>KIERNAN MAJOR,<br><br>      Defendant. | No. CR 2:22-00387-DSF<br><br>PLEA AGREEMENT FOR DEFENDANT KIERNAN MAJOR |

    1.   This constitutes the plea agreement between Kiernan Major ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

        a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts three and seven of the indictment in United States v. Kiernan Major, CR No.

2:22-cr-00387-DSF, which charge defendant with transmitting in interstate commerce a communication containing a threat, in violation of 18 U.S.C. § 875(c).

　　　　　b.　Not contest facts agreed to in this agreement.

　　　　　c.　Abide by all agreements regarding sentencing contained in this agreement.

　　　　　d.　Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

　　　　　e.　Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

　　　　　f.　Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

　　　　　g.　Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

　　　　　h.　Agree to and not oppose the imposition of the following conditions of probation or supervised release:

　　　　　　　i.　Defendant shall possess and use only those Digital Devices and Internet Accounts that have been disclosed to, and approved by, the United States Probation and Pretrial Services Office upon commencement of supervision. Any changes or additions to Digital Devices or Internet Accounts are to be disclosed to, and approved by, the Probation Officer prior to the first use of same. Disclosure shall include both usernames and passwords for all Digital Devices and Internet Accounts. Digital Devices include, but are not

1   limited to, personal computers, tablet computers such as iPads,

2   mobile/cellular telephones, personal data assistants, digital storage

3   media, devices or media which provide access to electronic games,

4   devices that can access or can be modified to access the Internet, as

5   well as any of their peripheral equipment.  Internet Accounts

6   include, but are not limited to, email accounts, social media

7   accounts, electronic bulletin boards, or other account on the

8   Internet.

9           ii.   After the Probation Officer has given defendant

10  approval to use a particular Digital Device or Internet Account,

11  defendant need not notify the Probation Officer about subsequent use

12  of that particular Digital Device or Internet Account.  Defendant

13  shall, however, notify his Probation Officer of any additions to,

14  removals from, or other modifications of the hardware or software on

15  any Digital Device or Internet Account that defendant causes to

16  occur, within one week of that addition, removal or modification.

17  The defendant shall not hide or encrypt files or data without

18  specific prior approval from the Probation Officer.

19          iii.  Defendant shall provide the Probation Officer

20  with all billing records for any service or good relating to any

21  Digital Device or Internet Account, including those for cellular

22  telephone, cable, Internet and satellite services, as requested by

23  the Probation Officer, so that the Probation Officer can verify

24  compliance with these requirements.

25          iv.   Defendant shall comply with the rules and

26  regulations of the Computer Monitoring Program.  Defendant shall pay

27  the cost of the Computer Monitoring Program, in an amount not

28  exceeding $32 per month per device connected to the internet.

1      v.    Defendant shall not knowingly contact, or attempt

2  to contact, the Victims identified in the indictment, or their

3  family, including but not limited to their parents, siblings, other

4  relatives, any spouse or significant other with whom the Victims may

5  share an intimate relationship, and any children of the Victims (all

6  whether existing now or during the pendency of any term of supervised

7  release, and collectively "the Victims' Families"), directly or

8  indirectly by any means, including but not limited to in person, by

9  mail, telephone, email, text message, or other electronic means, or

10  through a third party;

11      vi.   Defendant shall not attempt to locate the Victims

12  or the Victims' Families, or attempt to obtain information concerning

13  the whereabouts, phone numbers, email addresses, or other personal

14  identifiers of the Victims or the Victims' Families.

15                    THE USAO'S OBLIGATIONS

16  3.    The USAO agrees to:

17      a.    Not contest facts agreed to in this agreement.

18      b.    Abide by all agreements regarding sentencing contained

19  in this agreement.

20      c.    At the time of sentencing, move to dismiss the

21  remaining counts of the indictment as against defendant.  Defendant

22  agrees, however, that at the time of sentencing the Court may

23  consider any dismissed charges in determining the applicable

24  Sentencing Guidelines range, the propriety and extent of any

25  departure from that range, and the sentence to be imposed.

26      d.    At the time of sentencing, provided that defendant

27  demonstrates an acceptance of responsibility for the offense up to

28  and including the time of sentencing, recommend a two-level reduction

                                4

1  in the applicable Sentencing Guidelines offense level, pursuant to

2  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

3  additional one-level reduction if available under that section.

4       e.   Recommend that defendant be sentenced to a term of

5  imprisonment within the applicable Sentencing Guidelines range,

6  provided that the offense level used by the Court to determine that

7  range is 12 or higher and provided that the Court does not depart

8  downward in offense level or criminal history category. For purposes

9  of this agreement, the Sentencing Guidelines range is that defined by

10  the Sentencing Table in U.S.S.G. Chapter 5, Part A.

11       f.   At the time of sentencing, provided that (i) defendant

12  complies with paragraph 2 and the other provisions of this agreement

13  up through the time of sentencing, (ii) the Court adopts the

14  Sentencing Factors set forth in paragraph 12, and (iii) the Court

15  does not depart downward in criminal history category, recommend a 5-

16  level downward variance in offense level under <u>Booker v. United</u>

17  <u>States</u>, 543 U.S. 220 (2005), based on the factors set forth in 18

18  U.S.C. § 3553(a)(1)-(7).[1]

19  NATURE OF THE OFFENSE

20     4.   Defendant understands that for defendant to be guilty of

21  the crimes charged in counts three and seven, that is, transmitting

22  in interstate commerce a communication containing a threat, in

23  violation of 18 U.S.C. § 875(c), the following must be true: first,

24  the defendant knowingly transmitted in interstate commerce a

25

26

---

27  [1] The government's variance promise is to account for a prior
plea offer that failed to calculate correctly the Sentencing
Guidelines. The variance enables defendant to have the benefit of

28  the bargain, while correctly advising the Court of the applicable
Guidelines range.

1  communication containing a threat to injure a natural person; and

2  second, the communication was transmitted for the purpose of issuing

3  a threat, or with knowledge that the communication would be viewed as

4  a threat.

5  PENALTIES AND RESTITUTION

6      5.   Defendant understands that the statutory maximum sentence

7  that the Court can impose for each violation of 18 U.S.C. § 875(c),

8  is: five years' imprisonment; a three-year period of supervised

9  release; a fine of $250,000 or twice the gross gain or gross loss

10  resulting from the offense, whichever is greatest; and a mandatory

11  special assessment of $100.

12      6.   Defendant understands, therefore, that the total maximum

13  sentence for all offenses to which defendant is pleading guilty is:

14  ten years imprisonment; a six-year period of supervised release; a

15  fine of $500,000 or twice the gross gain or gross loss resulting from

16  the offenses, whichever is greatest; and a mandatory special

17  assessment of $200.

18      a.   Defendant understands that defendant will be required

19  to pay full restitution to the victims of the offense to which

20  defendant is pleading guilty.  Defendant agrees that, in return for

21  the USAO's compliance with its obligations under this agreement, the

22  Court may order restitution to persons other than the victims of the

23  offenses to which defendant is pleading guilty and in amounts greater

24  than those alleged in the counts to which defendant is pleading

25  guilty.  In particular, defendant agrees that the Court may order

26  restitution to any victim of any of the following for any losses

27  suffered by that victim as a result: (a) any relevant conduct, as

28  defined in U.S.S.G. § 1B1.3, in connection with the offenses to which

6

1    defendant is pleading guilty; and (b) any counts dismissed pursuant

2    to this agreement as well as all relevant conduct, as defined in

3    U.S.S.G. § 1B1.3, in connection with those counts and charges.

4         7.   Defendant understands that supervised release is a period

5    of time following imprisonment during which defendant will be subject

6    to various restrictions and requirements.  Defendant understands that

7    if defendant violates one or more of the conditions of any supervised

8    release imposed, defendant may be returned to prison for all or part

9    of the term of supervised release authorized by statute for the

10   offense that resulted in the term of supervised release, which could

11   result in defendant serving a total term of imprisonment greater than

12   the statutory maximum stated above.

13        8.   Defendant understands that, by pleading guilty, defendant

14   may be giving up valuable government benefits and valuable civic

15   rights, such as the right to vote, the right to possess a firearm,

16   the right to hold office, and the right to serve on a jury. Defendant

17   understands that he is pleading guilty to a felony and that it is a

18   federal crime for a convicted felon to possess a firearm or

19   ammunition.  Defendant understands that the convictions in this case

20   may also subject defendant to various other collateral consequences,

21   including but not limited to revocation of probation, parole, or

22   supervised release in another case and suspension or revocation of a

23   professional license.  Defendant understands that unanticipated

24   collateral consequences will not serve as grounds to withdraw

25   defendant's guilty pleas.

26        9.   Defendant and his counsel have discussed the fact that, and

27   defendant understands that, if defendant is not a United States

28   citizen, the convictions in this case make it practically inevitable

1  and a virtual certainty that defendant will be removed or deported
2  from the United States.  Defendant may also be denied United States
3  citizenship and admission to the United States in the future.
4  Defendant understands that while there may be arguments that
5  defendant can raise in immigration proceedings to avoid or delay
6  removal, removal is presumptively mandatory and a virtual certainty
7  in this case.  Defendant further understands that removal and
8  immigration consequences are the subject of a separate proceeding and
9  that no one, including his attorney or the Court, can predict to an
10 absolute certainty the effect of his convictions on his immigration
11 status.  Defendant nevertheless affirms that he wants to plead guilty
12 regardless of any immigration consequences that his pleas may entail,
13 even if the consequence is automatic removal from the United States.

14                          FACTUAL BASIS

15      10.  Defendant admits that defendant is, in fact, guilty of the
16 offenses to which defendant is agreeing to plead guilty.  Defendant
17 and the USAO agree to the statement of facts provided below and agree
18 that this statement of facts is sufficient to support a plea of
19 guilty to the charges described in this agreement and to establish
20 the Sentencing Guidelines factors set forth in paragraph 12 below but
21 is not meant to be a complete recitation of all facts relevant to the
22 underlying criminal conduct or all facts known to either party that
23 relate to that conduct.

24 *Victim 1:*

25      On May 31, 2021, in Los Angeles County, within the Central
26 District of California, and elsewhere, defendant, with intent to
27 issue a threat and with knowledge that it would be viewed as a
28 threat, knowingly transmitted in interstate commerce a communication

containing a true threat to injure the person of another, that is, messages to Victim 1 that included the following: "I'll kill all of your family any day.  It's just a matter of will.  You are the one who begs for hell."

Further, beginning in or before April 2021, and continuing until on or about July 10, 2022, defendant used cellular telephone networks, interstate wires, and the Internet to engage in a pattern of conduct that placed Victim 1 in reasonable fear of death or serious bodily injury to Victim 1 and her immediate family members. This pattern of conduct caused, was intended to cause, and would reasonably be expected to cause substantial emotional distress to Victim 1 and her immediate family members. Defendant's course of conduct included the following:

In September 2020, Victim 1 moved from New York to Los Angeles to work for defendant. After Victim 1 ceased communicating with defendant, defendant began calling Victim 1 repeatedly, ultimately culminating in threatening and harassing emails and text messages, specifically including the following:

a.   On April 25, 2021, at 9:49 p.m., defendant sent an email to Victim 1 titled "Show dad and his friends" which stated: "I will kill you and mutilate your siblings for years. It's only a matter of time the way you are acting. Please report me ASAP it will help you at least a little."

b.   On April 25, 2021, between 9:51 p.m., and 9:53 p.m., defendant sent two additional emails to Victim 1 titled "Re: Show dad and his friends." In one of the messages, he stated: "I will kill your family one by one. And then i will have a field day embarrassing your whore parents next week. Lol this is what you get for blocking

1  me. Cunt. [¶] Wait till i target [Victim 1's brother] and [Victim 1's
2  brother] hahaha.. bye."

3            c.    On April 25, 2021, at 9:55 p.m., defendant sent an
4  email to Victim 1 titled "you may not be scared," which stated: "but
5  if youob dont think i would torture your fam for fun hahahahahahaha
6  youre not even thinking right. You better relax whore."

7            d.    On April 25, 2021, defendant sent an email to Victim 1
8  with the subject line "youre gonna die" which stated: "im killing you
9  and whoever lives at all the addresses i know you reside at." At 9:59
10 p.m., under the same heading, defendant sent Victim 1 a message that
11 said "Btw if youre not there no worries someone will be alive and
12 ready to die."

13            e.    On April 25, 2021, at 10:00 p.m., defendant sent
14 Victim 1 an email with the subject and body titled "unblock me or die
15 by 4pm tomorrow."

16            f.    On May 12, 2021, defendant sent an email to Victim 1
17 titled "Warning" which stated: "[Victim #1], I cannot sustain the
18 suffrage that comes with our dispute at the present moment. It
19 genuinely drives me insane to re-experience the past everyday with
20 counsel, especially in such detail. For these reasons am temporarily
21 choosing to focus on and invest in my own well-being for a change.
22 This message serves only as a purpose to forewarn you of what is
23 patiently awaiting each and every living specimen of your past,
24 current and future and to update you on the status of your court
25 summons'. The nastiest truth's about all of you will be relentlessly
26 exposed and I will conduct this in such as public manner that it will
27 continue to haunt you guys in every corner of this planet until I
28 finally succeed in your guys' total extinction. You and your father

10

are absolutely terrible people and do not ever attempt to convince yourselves otherwise. This doesn't even scratch the surface of how I feel about you or the 'discomfort' you're all about to experience for the rest of your lives. Good luck to you all :) I almost hope you underestimate me. Count your fucking blessings, -Kiernan"

g.    On May 14, 2021, defendant sent a series of messages to Victim 1 over iMessage which stated: "We have just made our first round of calls to your employers. I wish you a horrible weekend. Please commit suicide sooner rather than later. See ya in court ya slut [¶] You will have to lock me up for life to stop me from going after you, your family and your friends. I am insanely creative and have been prepping this for over a year. Don't ruin your life. I beg you because when you apologize I'll end up feeling really bad. This will destroy your family without question. My last warning. I just feel it's moral to warn you. Sorry to harass." [¶] "You will always be an entitled little gold digging cunt. You're nothing but a waitress turned glorified nanny. Get over yourself and your fabricated reality. Remember that you have gotten no where in life on your own, neither has anyone in your family. You will never earn shit in your life unless throwing your pussy at rich men counts. I will expose you and our megalomaniac father. Your time is running thin slut and I will not relent. You can think you are making progress but you could own the state of NY and it wouldn't prevent what's to come. Good luck. You'll really need it. Sad you think I'm all talk. Bye."

h.    On May 17, 2021, defendant sent a series of messages to Victim 1 over iMessage which stated: "Be lucky I don't fucking kill your dad and you. Pussy whore cunt." [¶] "Fucking die whore.Pussy ass bitch." [¶] "Your homes are about to blasted." [¶]

11

1   "Kill yourselves before I end up doing it."

2         i.   On July 31, 2021, defendant sent a series of messages

3 to Victim 1 over text message which stated: "And if I don't kill him

4 myself, I hope your father dies."  [¶]  "I'll kill all of your family

5 any day. It's just a matter of will. You are the one who begs for

6 hell."

7         j.   On September 21, 2021, defendant sent a series of

8 messages to Victim 1 over text message which stated: "You're a slut

9 and a gold diggin whore and I'll prove it."  [¶]  "If I don't kill

10 someone you know, I'm ll be surprised."  [¶]   "If I see you I'm

11 killing you on the spot"  [¶]  "You're a fucking bitch. A whore cunt

12 bitch and you'll pay for it."  [¶]  "Slut ass bitch"  [¶]  "I will

13 kill you and your pathetic family"

14         k.   On November 23, 2021, defendant sent a message to

15 Victim 1 over text message which stated: "I adore how simple it is to

16 get you (and your family) to hang yourselves by your own rope."

17         l.   On June 27, 2022, defendant sent a series of messages

18 to Victim 1 over text message which stated: "I'd say within a year or

19 two someone gets brutally hurt over this if things are unchanged. But

20 that's just my guess."  [¶]  "I'm not going anywhere. I will burn

21 your life to the ground if I have to."  [¶]  "You have no real

22 friends don't forget that."  [¶]  "And one day you'll die in front of

23 your kids."

24         m.   On July 1, 2022, defendant sent Victim 1 a series of

25 text messages that included the following: "I would stay inside this

26 independence day."  [¶]  "I could kill your father in about 30

27 minutes so relax."  [¶]  "I hope you're dumb enough to ignore this

28 because I'm 200% killing you or someone you know l"  [¶]  "Without a

doubt I will kill someone by Monday." [¶]   "IM GONNA KILL ALL OF YOU FUCKING BITCHES" [¶]   "When I kill your father what would you like me to use?" [¶]   "You will never stop me no matter what the fuck you do from killing them now." [¶]   "And you're whole family about to get murdered tonight for it." [¶]   "If I need to find ANYONE you know and kill them I will" [¶]   "AND ILL KILL YOU FOR THAT" [¶] "ON FUCKING GOD I WILL KILL YOU" [¶]   "YOURE DAD IS GETTING MURDERED TONIGHT" [¶]   "I will fucking kill you and I swear I hate this because I am not this person"

n.   On July 6, 2022, defendant sent a series of messages to Victim 1 via text message which stated: "And you're whole family about to get murdered tonight for it" [¶]   "I will fucking fix this now or I will do something to someone" [¶]   " I will go to jail to accomplish this" [¶]   "If I need to find ANYONE you know and kill them I will" [¶]   "BUT DONT THINK I WONT HIT YOUR SISTER FIRST TJAT WHOE" [¶]   "I COULD SHOOT THAT BUTCH ANY DAY" [¶]   "Figure it out because I have set out to learn your father and sisters' patter of life."

o.   On or about July 10, 2022, defendant sent emails to Victim 1 which were titled: "YOU WILL DIE OVER THIS IF YOU DONT SMARTEN UP" and "I WILL MAKE SURE YOUR FATHER DIES A BRUTAL DEATH."

Defendant knowingly sent these communications with the intent to cause Victim 1 to experience fear and/or emotional distress.  Victim 1 did, in fact, experience fear and emotional distress after receiving these communications.

//

//

*Victim 2:*

On July 1, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant, with intent to issue a threat and with knowledge that it would be viewed as a threat, knowingly transmitted in interstate and foreign commerce a communication containing a true threat to injure the person of another, that is, messages to Victim 2 that included the following: "I INTEND TO KILL YOUR WHOLE FAMILY" and "HOW DARE YOI" and "IM COMING TO KILL THE FIRST FUCKING PERSON I SEE" and "YOU MOTHERFUCKING BITCH" and "I WILL FIND YOU" and "AND I WILL FUCKING SLAUGHTER YOU." Victim 2 received the messages, perceived them as a true threat, and was afraid.  Defendant intended for her to receive the messages, perceive them as a true threat, and be afraid.

Beginning on May 29, 2022, and continuing until on or about July 10, 2022, defendant used email, cellular telephone networks, interstate wires, and the Internet, to engage in a pattern of conduct that placed Victim 2 in reasonable fear of death or serious bodily injury to Victim 2 and her immediate family members, that caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to Victim 2 and her immediate family members. His course of conduct included the following:

Beginning in January 2022, defendant and Victim 2 began communicating. In May 2022, defendant began sending Victim 2 harassing and threatening messages, including the following:

a.   On May 29, 2022, defendant sent a series of text messages to Victim 2 which stated: "I honestly believe you guys want me to die"  [¶]  "I PROMISE it someone checks on my welfare I will kill Everyone"

14

1          b.    On June 25, 2022, after Victim 2 demanded payment for

2    money she lent defendant, defendant sent a series of text messages to

3    Victim 2 which stated: "You'll get paid on my terms or you'll get my

4    promises made."   [¶]   "My 'friends' aren't as nice."   [¶]   "What's

5    your faggot fathers number"   [¶]   "You or your bitch ass father can

6    call me."   [¶]   "I don't make threats I make promises btw."

7          c.    On June 27, 2022, defendant sent a series of text

8    messages to Victim 2 which stated: "You've drank too much of [Victim

9    # 1's] Kool-Aide."   [¶]   "For that expect to suffer life-long

10   consequences along side her until you guys get over yourselves and

11   take your fathers cock out of your mouths. And its sad you're naïve

12   enough to believe her. [Victim # 1] IS A LIAR!"   [¶]   "I will fucking

13   find you fuckers and I will fucking hold you accountable by whatever

14   means necessary. MEET WITH ME AND BE EVEN"   [¶]   "Or fucking DIE"

15   [¶]   "And I mean DIE"   [¶]   "You will both regret this"   [¶]   "Just

16   speak to me on the phone or meet in person and it's over. Until then

17   you're 1 year away from a bullet in your head. Metaphorically… that

18   is…"   [¶]   "But I'm gonna fucking make you guys pay for this"   [¶]

19   "YOU SPEAK HONESTLY OR YOU AND YOUR FAMILY CAN DIE ALONG WITH [Victim

20   1]"

21         d.    On July 1, 2022, defendant sent a series of messages

22   to Victim 2 via iMessage which stated: "I INTEND TO KILL YOUR WHOLE

23   FAMILY"   [¶]   "HOW DARE YOI"   [¶]   "IM COMING TO KILL THE FIRST

24   FUCKING PERSON I SEE"   [¶]   "YOU MOTHERFUCKING BITCH"   [¶]   "I WILL

25   FIND YOU"   [¶]   "AND I WILL FUCKING SLAUGHTER YOU"   [¶]   "I promise

26   my life goal is to revenge you and I don't care what it takes"   [¶]

27   "I will kill [Victim 2's brother] if I have to"   [¶]   "I don't give

28   one fuck"   [¶]   "I will not tolerate lies!"   [¶]   "YOU FUCKING

15

1  BETRAYING CUNT"

2      Defendant knowingly sent these communication with the intent to

3  cause Victim 2 to experience fear and/or emotional distress. Victim

4  2 did, in fact, experience fear and emotional distress when she

5  received these communications.

6                          SENTENCING FACTORS

7      11.  Defendant understands that in determining defendant's

8  sentence the Court is required to calculate the applicable Sentencing

9  Guidelines range and to consider that range, possible departures

10  under the Sentencing Guidelines, and the other sentencing factors set

11  forth in 18 U.S.C. § 3553(a). Defendant understands that the

12  Sentencing Guidelines are advisory only, that defendant cannot have

13  any expectation of receiving a sentence within the calculated

14  Sentencing Guidelines range, and that after considering the

15  Sentencing Guidelines and the other § 3553(a) factors, the Court will

16  be free to exercise its discretion to impose any sentence it finds

17  appropriate up to the maximum set by statute for the crimes of

18  conviction.

19      12.  Defendant and the USAO agree to the following applicable

20  Sentencing Guidelines factors:

21      Base Offense Level:             18          U.S.S.G. § 2A6.2(a)

22      Pattern of Activity Involving
        the Same Victim                 +2          U.S.S.G. § 2A6.2(b)(1)
23

24  Defendant and the USAO reserve the right to argue that additional

25  specific offense characteristics, adjustments, and departures under

26  the Sentencing Guidelines are appropriate. Defendant understands

27  that defendant's offense level could be increased if defendant is a

28  career offender under U.S.S.G. §§ 4B1.1 and 4B1.2. If defendant's

offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

13. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

WAIVER OF CONSTITUTIONAL RIGHTS

14. Defendant understands that by pleading guilty, defendant gives up the following rights:

a. The right to persist in a plea of not guilty.

b. The right to a speedy and public trial by jury.

c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

1                    WAIVER OF APPEAL OF CONVICTION

2        15.   Defendant understands that, with the exception of an appeal

3   based on a claim that defendant's guilty pleas were involuntary, by

4   pleading guilty defendant is waiving and giving up any right to

5   appeal defendant's convictions on the offenses to which defendant is

6   pleading guilty.  Defendant understands that this waiver includes,

7   but is not limited to, arguments that the statute to which defendant

8   is pleading guilty is unconstitutional, and any and all claims that

9   the statement of facts provided herein is insufficient to support

10  defendant's pleas of guilty.

11              LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

12       16.   Defendant agrees that, provided the Court imposes a total

13  term of imprisonment within or below the range corresponding to an

14  offense level of 12 and the criminal history category calculated by

15  the Court, defendant gives up the right to appeal all of the

16  following: (a) the procedures and calculations used to determine and

17  impose any portion of the sentence; (b) the term of imprisonment

18  imposed by the Court; (c) the fine imposed by the Court, provided it

19  is within the statutory maximum; (d) to the extent permitted by law,

20  the constitutionality or legality of defendant's sentence, provided

21  it is within the statutory maximum; (e) the amount and terms of the

22  restitution order; (f) the term of probation or supervised release

23  imposed by the Court, provided it is within the statutory maximum;

24  and (g) any of the following conditions of probation or supervised

25  release imposed by the Court: the conditions set forth in Second

26  Amended General Order 20-04 of this Court; the drug testing

27  conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

28  alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7);

1  and any conditions of probation or supervised release agreed to by

2  defendant in paragraph 2(h) above.

3      17.  Defendant also gives up any right to bring a post-

4  conviction collateral attack on the convictions or sentence, except a

5  post-conviction collateral attack based on a claim of ineffective

6  assistance of counsel, a claim of newly discovered evidence, or an

7  explicitly retroactive change in the applicable Sentencing

8  Guidelines, sentencing statutes, or statutes of conviction.

9  Defendant understands that this waiver includes, but is not limited

10 to, arguments that the statutes to which defendant is pleading guilty

11 are unconstitutional, and any and all claims that the statement of

12 facts provided herein is insufficient to support defendant's pleas of

13 guilty.

14     18.  The USAO agrees that, provided (a) all portions of the

15 sentence are at or below the statutory maximum specified above, and

16 (b) the Court imposes a term of imprisonment within or above the

17 range corresponding to an offense level of 12 and the criminal

18 history category calculated by the Court, the USAO gives up its right

19 to appeal any portion of the sentence, with the exception that the

20 USAO reserves the right to appeal the amount of restitution ordered.

21              RESULT OF WITHDRAWAL OF GUILTY PLEA

22     19.  Defendant agrees that if, after entering guilty pleas

23 pursuant to this agreement, defendant seeks to withdraw and succeeds

24 in withdrawing defendant's guilty pleas on any basis other than a

25 claim and finding that entry into this plea agreement was

26 involuntary, then (a) the USAO will be relieved of all of its

27 obligations under this agreement; and (b) should the USAO choose to

28 pursue any charge that was either dismissed or not filed as a result

of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

20. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

21. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

1    22.  Following the Court's finding of a knowing breach of this

2    agreement by defendant, should the USAO choose to pursue any charge

3    that was either dismissed or not filed as a result of this agreement,

4    then:

5         a.  Defendant agrees that any applicable statute of

6    limitations is tolled between the date of defendant's signing of this

7    agreement and the filing commencing any such action.

8         b.  Defendant waives and gives up all defenses based on

9    the statute of limitations, any claim of pre-indictment delay, or any

10   speedy trial claim with respect to any such action, except to the

11   extent that such defenses existed as of the date of defendant's

12   signing this agreement.

13        c.  Defendant agrees that: (i) any statements made by

14   defendant, under oath, at the guilty plea hearing (if such a hearing

15   occurred prior to the breach); (ii) the agreed to factual basis

16   statement in this agreement; and (iii) any evidence derived from such

17   statements, shall be admissible against defendant in any such action

18   against defendant, and defendant waives and gives up any claim under

19   the United States Constitution, any statute, Rule 410 of the Federal

20   Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

21   Procedure, or any other federal rule, that the statements or any

22   evidence derived from the statements should be suppressed or are

23   inadmissible.

24        COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

25                    OFFICE NOT PARTIES

26   23.  Defendant understands that the Court and the United States

27   Probation and Pretrial Services Office are not parties to this

28   agreement and need not accept any of the USAO's sentencing

1  recommendations or the parties' agreements to facts or sentencing

2  factors.

3      24.  Defendant understands that both defendant and the USAO are

4  free to: (a) supplement the facts by supplying relevant information

5  to the United States Probation and Pretrial Services Office and the

6  Court, (b) correct any and all factual misstatements relating to the

7  Court's Sentencing Guidelines calculations and determination of

8  sentence, and (c) argue on appeal and collateral review that the

9  Court's Sentencing Guidelines calculations and the sentence it

10  chooses to impose are not error, although each party agrees to

11  maintain its view that the calculations in paragraph 12 are

12  consistent with the facts of this case.  While this paragraph permits

13  both the USAO and defendant to submit full and complete factual

14  information to the United States Probation and Pretrial Services

15  Office and the Court, even if that factual information may be viewed

16  as inconsistent with the facts agreed to in this agreement, this

17  paragraph does not affect defendant's and the USAO's obligations not

18  to contest the facts agreed to in this agreement.

19      25.  Defendant understands that even if the Court ignores any

20  sentencing recommendation, finds facts or reaches conclusions

21  different from those agreed to, and/or imposes any sentence up to the

22  maximum established by statute, defendant cannot, for that reason,

23  withdraw defendant's guilty pleas, and defendant will remain bound to

24  fulfill all defendant's obligations under this agreement.  Defendant

25  understands that no one -- not the prosecutor, defendant's attorney,

26  or the Court -- can make a binding prediction or promise regarding

27  the sentence defendant will receive, except that it will be within

28  the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

26.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

27.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney


/s                                                  4-10-23
_____     _____
ALIX MCKENNA                        Date
Assistant United States Attorney
                                    4-10-23
_____     _____
KIERNAN MAJOR                       Date
Defendant
                                    4-10-23
_____     _____
NEHA A. CHRISTERNA                  Date
Attorney for Defendant Kiernan
Major


<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand

1   the terms of this agreement, and I voluntarily agree to those terms.

2   I have discussed the evidence with my attorney, and my attorney has

3   advised me of my rights, of possible pretrial motions that might be

4   filed, of possible defenses that might be asserted either prior to or

5   at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

6   of relevant Sentencing Guidelines provisions, and of the consequences

7   of entering into this agreement.  No promises, inducements, or

8   representations of any kind have been made to me other than those

9   contained in this agreement.  No one has threatened or forced me in

10  any way to enter into this agreement.  I am satisfied with the

11  representation of my attorney in this matter, and I am pleading

12  guilty because I am guilty of the charges and wish to take advantage

13  of the promises set forth in this agreement, and not for any other

14  reason.

15                                                    4-10-23

16  KIERNAN MAJOR                                     Date
    Defendant

17

18

19

20

21

22              CERTIFICATION OF DEFENDANT'S ATTORNEY

23      I am Kiernan Major's attorney.  I have carefully and thoroughly

24  discussed every part of this agreement with my client.  Further, I

25  have fully advised my client of his rights, of possible pretrial

26  motions that might be filed, of possible defenses that might be

27  asserted either prior to or at trial, of the sentencing factors set

28  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

                                  24

provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____       4-10-23
NEHA A. CHRISTERNA                     _____
Attorney for Defendant Kiernan         Date
Major