E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
ALIX MCKENNA (Cal. Bar No. 295202)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6166
     Facsimile: (213) 894-0141
     E-mail:    alix.mckenna@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:22-CR-00387-DSF |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Hearing Date: May 22, 2023 |
| KIERNAN MAJOR, | Hearing Time: 1:30 p.m. |
| Defendant. | Location:   Courtroom of the Hon. Dale S. Fischer |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Alix McKenna, hereby files its sentencing position.

//

//

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 17, 2023                    Respectfully submitted,

                                          E. MARTIN ESTRADA
                                          United States Attorney

                                          MACK E. JENKINS
                                          Assistant United States Attorney
                                          Chief, Criminal Division


                                                       /s/
                                          ALIX MCKENNA
                                          Assistant United States Attorney

                                          Attorneys for Plaintiff
                                          UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Between October 2020, and July 10, 2022, defendant Kiernan Major ("defendant") used his cell phone and the Internet to repeatedly threaten and harass Victim 1, placing both her and her family in reasonable fear of death or serious bodily injury. (Indictment, Dkt. 6, Presentence Investigation Report ("PSR") ¶ 7.) Further, between May 29, 2022, and July 10, 2022, defendant did the exact same thing to Victim 2, repeatedly threatening and harassing her and her family, placing them in reasonably fear of death or serious bodily injury. (Id. at ¶ 13.) As a result of his conduct, defendant was charged with two counts of stalking, in violation of 18 U.S.C. § 2261A(2)(A), (B), 2261(b)(5), and four counts of making threats, in violation of 18 U.S.C. § 875 (c). (Indictment, Dkt. 6.)

On April 24, 2023, defendant pled guilty to two counts of threats, in violation of 18 U.S.C. § 875 (c), counts three and seven of the indictment. (PSR ¶ 7.)

**II. STATEMENT OF FACTS**

**A. Victim 1**

In September 2020, Victim 1 moved from New York to Los Angeles to work for defendant, whom she had known for a decade. (PSR ¶ 9., Victim 1 Declaration ("Exhibit 1").) After Victim 1 ceased communicating with him, defendant began calling her repeatedly, ultimately culminating in threatening and harassing emails and text messages, including the threat that forms the basis of count three. (Id.)

1. <u>Count Three: May 31, 2021, Death Threat</u>

On May 31, 2021, after sending numerous violent messages to Victim 1 over text message and e-mail, defendant sent a threat to Victim 1, saying "I'll kill all of your family any day. It's just a matter of will. You are the one who begs for hell." (Plea agreement, ¶ 10).

2. <u>Stalking</u>

Between October 2020, and July 10, 2022, defendant sent numerous threatening text messages, iMessages, and emails to Victim 1, placing her in reasonable fear of death or serious bodily injury. (Dkt. 6, Presentence Investigation Report ("PSR") ¶ 7.)  The threatening messages caused Victim 1 to experience fear and emotional distress. (<u>Id.</u> at ¶ 10.)

Below is a representative, non-exclusive sample[1] of the threats that defendant sent to Victim 1:

*April 2021*

On April 25, 2021, defendant sent multiple threatening emails to Victim 1.  (<u>Id.</u> at ¶ 9.)  In one message titled "Show dad and his friends" he stated: "I will kill you and mutilate your siblings for years. It's only a matter of time the way you are acting. Please report me ASAP it will help you at least a little."  (<u>Id.</u> at ¶ 9.) In another email from that date titled "youre gonna die" he wrote "im killing you and whoever lives at all the addresses i know you reside at."  He sent Victim 1 a follow up message saying "Btw if youre not there no worries someone will be alive and ready to die."

---

[1] Additional threats are described in the indictment and the factual basis of the plea agreement.  (Dkt. 6, 22.)

*May 2021*

In May of 2021, defendant continued to email violent threats to Victim 1.  (Id. at ¶ 9.)  On May 12, 2021, he sent her an email titled "Warning," in which he claimed to warn her "of what is patiently awaiting each and every living specimen of [her] past, current and future," and said "[t]he nastiest truth's about all of you will be relentlessly exposed."  (Id.)  Defendant threatened to "conduct this in such as public manner that it will continue to haunt [Victim 1 and her loved ones] in every corner of this planet," eventually resulting in their "total extinction."  (Id.)  Two days later, defendant sent Victim 1 a series of messages which stated: "We have just made our first round of calls to your employers. I wish you a horrible weekend.  Please commit suicide sooner rather than later. See ya in court ya slut You will have to lock me up for life to stop me from going after you, your family and your friends . . .  This will destroy your family without question.  My last warning. . ." (Id.)  Three days later, on May 17, 2021, defendant sent a series of messages to Victim 1 which stated: "Be lucky I don't fucking kill your dad and you. Pussy whore cunt." "Fucking die whore.Pussy ass bitch." "Your homes are about to blasted." Kill yourselves before I end up doing it."  (Id.)

*September 2021*

On September 21, 2021, defendant sent a series of messages to Victim 1 which stated: "You're a slut and a gold diggin whore and I'll prove it." "If I don't kill someone you know, I'm be surprised." "If I see you I'm killing you on the spot" "You're a fucking bitch. A whore cunt bitch and you'll pay for it." "Slut ass bitch" kill you and your pathetic family."  (Id.)

3

*November 2021*

On November 23, 2021, defendant sent a text message to Victim 1 which stated: "I adore how simple it is to get you (and your family) to hang yourselves by your own rope." (Id.)

*June and July 2022*

On June 27, 2022, more than a year after he began threatening to kill Victim 1, defendant sent Victim 1 a series of messages which stated: "I'd say within a year or two someone gets brutally hurt over this if things are unchanged. But that's just my guess." He told her "I will burn your life to the ground if I have to," and said, "one day you'll die in front of your kids." (Id.)

On July 1, 2022, defendant texted Victim 1, warning her to "stay inside this independence day." (Id.) He told her "I hope you're dumb enough to ignore this because I'm 200% killing you or someone you know." (Id.) Defendant told Victim 1 "IM GONNA KILL ALL OF YOU FUCKING BITCHES" and warned her that her "whole family" was "about to get murdered." (Id.)
Five days later, on July 6, 2022, defendant sent Victim 1 an additional series of messages threatening to kill her family, shoot her sister, and cause her father a brutal death. (Id.)

3. Impact of Defendant's Conduct on Victim 1

Victim 1 was deeply hurt by the actions of defendant, a man whom she has known for over a decade. (Exhibit 1). She described the period in which she worked for him as a "mentally abusive" work situation, in which de "lied, stole, and harassed" her for months. (Id.) She suffered "immense anguish" as a result of the death threats he sent to her as well as "inappropriate, harsh, and graphic emails" that he sent to her father. (Id.) In addition to harming

4

Victim 1, defendant's campaign of harassment created "an uneasy feeling throughout [Victim 1's] household." (Id.)

### B. Victim 2

In January of 2022, Victim 2 met defendant and began an intimate personal relationship with him. (Id., Victim 2 Impact Statement (Exhibit 2)). During this relationship, he lied to her about his background, preyed on Victim 2 emotionally, and manipulated her into draining her bank account, opening new credit cards, and transferring large sums of money to him. (Exhibit 2, Victim 2 Father Declaration (Exhibit 3)).

In May of 2022, about four months after the start of their relationship, defendant began sending violent death threats to Victim 2. (PSR ¶ 14.) He continued threatening her and her family through the beginning of July of 2022.

#### 1. Count 7: July 1, 2022, Death Threat

On July 1, 2023, defendant sent a message to Victim 2 saying "I INTENT TO KILL YOUR YOUR WHOLE FAMILY [. . .] HOW DARE YOI [. . .] IM COMING TO KILL THE FIRST FUCKING PERSON I SEE [. . .] YOU MOTHERFUCKING BITCH [. . .] I WILL FIND YOU [. . .] AND I WILL FUCKING SLAUGHTER YOU." (PSR ¶ 14.)

#### 2. Stalking

Much like with Victim 1, between May 29, 2022, and July 10, 2022, defendant sent numerous threatening messages to Victim 2, placing her in reasonable fear of death or serious bodily injury. (Dkt. 6, PSR ¶ 13-14.) The threatening messages caused Victim 2 to experience fear and emotional distress. (Id. at ¶ 15.)

Below is a representative, non-exclusive sample of the threats that defendant sent to Victim 2 between May and July of 2022:

*May 2022*

On May 29, 2022, defendant sent a series of text messages to Victim 2 stating: "I honestly believe you guys want me to die" and "I PROMISE it someone checks on my welfare I will kill Everyone." (Id.)

*June 2022*

On June 25, 2022, after Victim 2 demanded payment for money that defendant owed her, defendant sent her a series of angry text messages stating "[M]y 'friends' aren't as nice," and "I don't make threats I make promises." (Id.)

Two days later, on June 27, 2022, defendant sent Victim 2 a series of threatening text messages which stated: "You've drank too much of [Victim 1's] Kool-Aide." "For that expect to suffer lifelong consequences along side her until you guys get over yourselves and take your fathers cock out of your mouths." (Id.) He told Victim 2 that he would "fucking find you fuckers and I will fucking hold you accountable by whatever means necessary. MEET WITH ME AND BE EVEN" "Or fucking DIE" "And I mean DIE" "You will both regret this" "Just speak to me on the phone or meet in person and it's over. Until then you' re 1 year away from a bullet in your head. Metaphorically ... that is ... "But I'm gonna fucking make you guys pay for this" "YOU SPEAK HONESTLY OR YOU AND YOUR FAMILY CAN DIE ALONG WITH [Victim 1]." (Id.)

       3.   Impact of Defendant's Conduct on Victim 2

Victim 2 was terrified and devastated by defendant's conduct, which affected her physical and mental health, her financial security, and sense of self-worth. (Ex. 2.) In her victim impact statement, she describes how defendant "psychologically broke [her]

6

down until [she] would give anything, including [her] life, just to make it stop." (Id.)  She was left "thinking over and over how either he was going to kill" her or her "life was over anyway." (Id.)  As she went about her day, her "phone became a ticking time bomb, blown up with horrific messages." (Id.)  Finally, she turned off her electronics and hid them from sight. (Id.)

Due to her fear of defendant, Victim 2 moved out of her apartment, installed a security system, and sought a temporary restraining order. (PSR ¶ 16.)  In addition to causing Victim 2 emotional harm, defendant manipulated her into spending large amounts of money on him, causing her a substantial financial loss. (Id., Ex. 2.)

Defendant's threats impacted Victim 2's nuclear family. (Ex. 2).  In a victim impact statement, her father described how family members avoided public events in their community and became weary of phone calls and texts. (Id.)  He stated that Victim 2's parents missed substantial periods of work in order to help her make it through the emotional trauma caused by defendant's violent threats. (Id.)  Victim 2's parents have suffered many sleepless nights and continue to fear that defendant will make good on his promise to kill her family. (Id.)

**III. GUIDELINES CALCULATIONS**

In the PSR, the USPO calculated the base offense level for defendant's crime as 18 under U.S.S.G. § 2A6.2(a). (PSR ¶ 23.) Further, probation calculated an additional 2 level increase under U.S.S.G. § 2A6.2(b)(1)(E) because the alleged conduct involved a pattern of activity involving two or more separate instances of threatening conduct that placed the victims in reasonable fear of

7

death or serious bodily injury. (Id. ¶ 24.) Finally, probation also added an additional two points pursuant to U.S.S.G. § 3D1.4 as a multiple count adjustment because Counts 3 and 7 did not group. (Id. ¶ 37.) Because of defendant's early acceptance of responsibility, probation subtracted three points for a total offense level of 19. (Id.)

The government is in agreement with this calculation. However, pursuant to the plea agreement, the government recommends a 5-level downward variance in offense level under Booker v. United States, 543 U.S. 220 (2005), based on the factors set forth in 18 U.S.C. § 3553(a)(1)-(7). Thus, the government is recommending that the court apply an offense level of 14. Defendant is in criminal history category I. (PSR ¶ 47.) With an offense level of 14, his Guidelines range is 15-21 months. U.S.S.G. Sentencing Table.

## IV. ARGUMENT

### A. A High-point Custodial Sentence of 21 Months Is Sufficient but Not Greater Than Necessary

The government respectfully recommends that the Court impose a sentence of 21 months' imprisonment (the high-point of the Guidelines range), a three-year period of supervised release including provisions that he not possess weapons and not contact the victims and their relatives, a mandatory special assessment of $200, and restitution. The parties believe that restitution will be very complex in this case and will request a separate hearing at a later date in order to brief the issue. The proposed sentence is sufficient, but not greater than necessary, to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2) for the offense.

8

1.  Section § 3553(a)(1): Nature and Circumstances of the Offense and Offender Characteristics

Section § 3553(a)(1) directs the court to consider the "nature and circumstances of the offense and the history and characteristics of the defendant," when selecting an appropriate sentence. 18 U.S.C. § 3553 (a)(1). Here, the defendant spent more than a year and a half sending violent and obscene threats to Victim 1. During this time, he also spent approximately a month and a half sending cruel and violent threats to Victim 2. His vicious conduct terrified Victim 2's family, damaged her mental health, and caused her to change locations and seek a restraining order. (Ex. 1.) Given the prolonged nature of his harassment, he may well have continued his threats for an even longer period if he had not been arrested. (Dkt. 10.) Defendant's conduct was cruel, prolonged, and devastating to his victims. The nature and circumstances of the offense are egregious and warrant a sentence of 21 months.

2.  Section 3553(a)(2) factors

Section 3553(a)(2) lists the purposes of a punitive sentence and directs the court to impose a sentence that is sufficient but not greater than necessary to comply with those purposes: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). A custodial sentence of 21 months is

sufficient, but not greater than necessary to satisfy at least the first three of these purposes.

        *a.    A Sentence of 21 Months Would Reflect the Seriousness of the Offense, Promote Respect for the Law and Constitute a Just Punishment*

First, a 21-month sentence would reflect the seriousness of the crime, promote respect for the law, and provide just punishment for the offense. Defendant threatened one woman and her family for well over a year, and then threatened a second woman and her family for over a month. His conduct was very serious and drastically affected the lives of his victims. A 21-month sentence is appropriate.

        *b.    A Sentence of 21 Months Would Deter Future Criminal Conduct*

Second, a 21-month sentence would deter future conduct. Defendant's frightening behavior was extremely prolonged and caused the victims' lasting anxiety. During his campaign of harassment, defendant explicitly told Victim 1 "You will have to lock me up for life to stop me from going after you, your family and your friends." (PSR ¶ 9.) His conduct stopped only due to law enforcement intervention. A sentence of 21 months is therefore necessary to deter future threatening conduct by highlighting the harmfulness of his behavior and the serious consequences that result from sending illegal death threats.

        *c.    A 21 Month Sentence Would Protect the Public from Future Crimes by the Defendant*

Third, the circumstances of this crime and the surrounding conduct suggest that defendant is a significant danger to the public. Defendant is a manipulative harasser of women. The brazenness and pervasiveness of his threats suggests that he is a danger to the

public and the specific victims in this case.  A sentence of 21-months will protect the public and the victims from additional criminal conduct by defendant.

### B. A Three-Year Term of Supervised Release Is Appropriate

Given the length of time that defendant engaged in illegal threatening behavior, the government is seeking a three-year term of supervised release.  Further, the government is requesting the Court impose the terms and conditions agreed upon in the plea agreement at paragraph 2(h), including, but not limited to, an order to stay away from the victims and to refrain from contacting them and their immediate family members, including by contacting them through another person.  Defendant's threats were extremely disruptive of the victims' lives and future contact by him would be both frightening and painful for them.  A supervised release requirement that defendant refrain from contacting the victims would help protect them and their families from future harm.  Given defendant's repeated threats to kill, maim, and/or shoot the victims and their family members, the government is also requesting that he be prohibited from possessing a weapon while on supervised release.

### C. Victim Restitution

The United States is still reviewing victim restitution requests.  18 U.S.C. § 3663 prescribes mandatory restitution for a crime where an identifiable victim suffers a pecuniary loss.  18 U.S.C.A. § 3663A.  Further, 18 U.S.C.A. § 3663 permits a court to order a defendant to pay restitution to a victim in cases where such an order is not mandated by law.  18 U.S.C.A. § 3663A.

The United States requests a restitution hearing be set 60-90 days after the sentencing, under 18 U.S.C. § 3664(d)(5), in order to fully account for any and all the victim restitution requests.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court apply a total offense level of 14 and sentence defendant to: (1) 21 months' imprisonment; (2) a three-year term of supervised release; and (3) a mandatory special assessment of $200. The government also respectfully requests that the Court set a restitution hearing.